

# THE ATTORNEY GENERAL
## OF TEXAS

June 2, 1989

JIM MATTOX
ATTORNEY GENERAL

Honorable D. C. (Jim) Dozier
Montgomery County Attorney
Courthouse
Conroe, Texas   77301

Opinion No.   JM-1052

Re:   Responsibilities of the Montgomery County Hospital District with regard to indigent health care   (RQ-1625)

Dear Mr. Dozier:

You ask a number of questions about article IX, sections 9 and 13, of the Texas Constitution.  Because your questions require a careful reading of the two constitutional provisions you ask about, we will discuss the language and history of those two provisions before we address your specific questions.

Article IX, section 9, provides in part:

> The Legislature may by law provide for the creation, establishment, maintenance and operation of hospital districts composed of one or more counties or all or any part of one or more counties with power to issue bonds for the purchase, construction, acquisition, repair or renovation of buildings and improvements and equipping same, for hospital purposes; providing for the transfer to the hospital district of the title to any land, buildings, improvements and equipment located wholly within the district which may be jointly or separately owned by any city, town or county, <u>providing that any district so created shall assume full responsibility for providing medical and hospital care for its needy inhabitants</u> and assume the outstanding indebtedness incurred by cities, towns and counties for hospital purposes prior to the creation of the district, . . . providing that after its creation <u>no other municipality or political subdivision shall have the power to levy taxes or issue bonds or other obligations for</u>

> hospital purposes or for providing medical
> care within the boundaries of the dis-
> trict . . . .   (Emphasis added.)

See also Tex. Const. art. IX, § 4 (a 1954 amendment providing for the creation of county-wide hospital districts in counties with a population of 190,000 or more).

Article IX, section 9, which was adopted in 1962, contains two specific statements regarding the obligations of hospital districts: (1) hospital districts are to assume full responsibility for providing medical and hospital care for their needy inhabitants, and (2) hospital districts are to assume the outstanding indebtedness incurred before the creation of the district for hospital purposes by cities, towns and counties within the district. Article IX, section 9, also contains a prohibition applicable to other political subdivisions: It prohibits other political subdivisions within the boundaries of a hospital district from expending funds for any type of medical care, not just medical care for the needy.

In 1966 this office issued an opinion that considered whether a county that was included within the boundaries of a hospital district could spend money to establish a community center for mental health and mental retardation services in accordance with the provisions of article 5547-203, V.T.C.S. Attorney General Opinion C-646 (1966). The opinion concluded that mental health and mental retardation services constituted medical care and that therefore a county that lay within the boundaries of a hospital district could not spend money to establish a facility to provide such services.

The next year, apparently in response to Attorney General Opinion C-646, the voters adopted article IX, section 13, of the constitution, which provides:

> Notwithstanding any other section of this article, the Legislature in providing for the creation, establishment, maintenance and operation of a hospital district, shall not be required to provide that such district shall assume full responsibility for the establishment, maintenance, support, or operation of mental health services or mental retardation services including the operation of any community mental health centers, community mental retardation centers or community mental health and mental re-tardation centers which may exist or be

thereafter established within the boundaries of such district, nor shall the Legislature be required to provide that such district shall assume full responsibility of public health department units and clinics and related public health activities or services, and the Legislature shall not be required to restrict the power of any municipality or political subdivision to levy taxes or issue bonds or other obligations or to expend public moneys for the establishment, maintenance, support, or operation of mental health services, mental retardation services, public health units or clinics or related public health activities or services or the operation of such community mental health or mental retardation centers within the boundaries of the hospital districts; and unless a statute creating a hospital district shall expressly prohibit participation by any entity other than the hospital district in the establishment, maintenance, or support of mental health services, mental retardation services, public health units or clinics or related public health activities within or partly within the boundaries of any hospital district, any municipality or any other political subdivision or state-supported entity within the hospital district may participate in the establishment, maintenance, and support of mental health services, mental retardation services, public health units and clinics and related public health activities and may levy taxes, issue bonds or other obligations, and expend public moneys for such purposes as provided by law.

In short, article IX, section 13, created an exception from the article IX, section 9, prohibition on the expenditure of funds for medical care by political subdivisions within a hospital district. We will now turn to your specific questions.

Your first question is:

What is the definition of the term 'medical care' as anticipated by article IX, section 9 of the Texas Constitution?

Article IX, section 9, uses the term "medical care" twice. First, it requires hospital districts to assume full

responsibility for providing medical care for its needy inhabitants. Second, it prohibits political subdivisions within a hospital district from spending funds on medical care.[1]

In regard to medical care for the needy, it is the responsibility of the board of directors of a hospital district to determine what medical care is to be provided pursuant to article IX, section 9.[2] Attorney General Letter Opinion LO-88-33; see Attorney General Opinions M-1154 (1972); M-85 (1967); C-334 (1964); see generally Attorney General Opinions JM-815, JM-746 (1987). Similarly, the question of whether an expenditure by a political subdivision within a hospital district is an expenditure for medical care must be determined on a case-by-case basis. See generally Attorney General Opinions H-1279 (1978) (county in a hospital district may provide ambulance service); C-646 (1966).

Your second question is:

> What is the definition of 'public health units or clinics' as anticipated by article IX, section 13 of the Texas Constitution?

Again, whether a particular establishment is a public health unit or clinic within the meaning of article IX, section 13, of the Texas Constitution is a determination that would have to be made on a case-by-case basis.

Your third question is:

> Does each of those services named in the above-referenced sections of article IX, section 13 have to be expressly listed as being prohibited in the enabling act in order

---

1. As we pointed out, the obligation placed on hospital districts, i.e., to assume full responsibility for medical care for needy inhabitants, is narrower than the prohibition placed on other political subdivisions within the district against spending their funds on medical care generally, not just medical care for indigents.

2. The legislature has authority to determine the health-care services a hospital district must provide, Tex. Const. art. IX, § 9A, but to date the legislature has not exercised that authority.

> to be prohibited under the terms of article IX, section 9? Or do the services listed in article IX, section 13 constitute the definition of the term 'medical care'? Certainly, the phrase '. . . public health units or clinics . . .' anticipates the providing of some form of medical care.

Apparently you are asking whether a provision in a hospital district's enabling statute prohibiting a political subdivision within a hospital district from providing medical care is sufficient to suspend any authority such a political subdivision might otherwise have to provide mental health or mental retardation services or public health units or clinics. Under article IX, section 9, any political subdivision within a hospital district would be subject to the general prohibition on the provision of medical care. Therefore, we think that article IX, section 13, was intended to require a more specific prohibition in order to prohibit political subdivisions within a hospital district from providing mental health or mental retardation services or public health services. We conclude therefore that the enabling statute of a hospital district must specifically mention mental health and mental retardation services and public health units and clinics in order to prohibit a political subdivision within a hospital district from exercising any authority it might otherwise have to provide such services. See Attorney General Opinion H-454 (1974).

Your fourth question is:

> Referring to those services listed on attached 'Exhibit Two' and currently being performed by the Montgomery County Health Department, which of those services are prohibited by article IX, section 9 of the Texas Constitution and the Montgomery County Enabling Act? Which are allowed by article IX, section 13, of the Texas Constitution?

The "Exhibit Two" you refer to is a description of the services offered by different divisions of the Montgomery County Health Department, including several county health clinics. Some of the services provided by those clinics may constitute "medical care." If, however, those services are provided by a public health clinic, as they appear to be, the constitution does not prevent the county from providing those services. It is the county's responsibility, in the first instance, to determine whether the services in question constitute medical care and, if so, whether they are offered by a public health clinic.

Your fifth question is:

> Depending on your definition of 'medical care,' and your reading of article IX, section 9 and article IX, section 13 of the Texas Constitution and the Montgomery County Enabling Act, is the duty of providing medical care for needy residents exclusively imposed on the Montgomery County Hospital District?

It is clear that the duty of providing indigent health care is placed on the hospital district. Neither article IX, section 13, of the constitution nor the Indigent Health Care and Treatment Act, article 4438f, V.T.C.S., imposes an obligation on political subdivisions within a hospital district to provide indigent health care.

Your sixth question is:

> If the term 'medical care,' as defined, does not include those services named in article IX, section 13, what entity has the duty to provide those services since the applicable portion of article IX, section 13 is clearly permissive, notwithstanding the mandatory provisions of article 4436b, section 4.09(b).

Your question raises several issues. First, your question raises the issue of whether mental health and mental retardation services and services provided by public health units and clinics constitute "medical care." We do not think that article IX, section 13, was intended to limit the definition of "medical care." Rather, it was intended to allow political subdivisions within a hospital district to provide certain services, regardless of whether they constitute medical care.

You also note the provisions of article 4436b, V.T.C.S., which allow counties and municipalities to create public health districts. V.T.C.S. art. 4436b, § 4.01. The statute also allows a county to establish a local health department. Id. § 4.07(a). Once a public health district or a local health department is created, it must provide the following public health services:

> (1) personal health promotion and maintenance services;

> (2) infectious disease control and prevention services;

(3) environmental and consumer health programs for enforcement of health and safety laws related to food, water, water control, general sanitation, and vector control;

(4) public health education and information services;

(5) laboratory services; and

(6) administrative services.

Id. § 4.09. In short, once a county joins a health district or establishes a local health department, it has a duty to provide certain public health services. Section 4.08(a)(1) of article 4436b provides:

(1) no individual shall be denied public health services because of inability to pay for services, and the municipality, county, or district shall make provisions for a reduced fee or no fee for individuals unable to pay for services in whole or in part.

Your question raises the issue of whether sections 4.08(a) and 4.09 of article 4436b require a local health department or health district to provide certain types of medical care to an indigent who is a resident of a hospital district. First, because it is the responsibility of a hospital district to determine what medical care it must provide to indigents, we cannot resolve the fact question of whether there is an overlap in the duty placed on a hospital district to provide medical care for its needy inhabitants and the duty of a county within the boundaries of a hospital district that has a duty to provide public health services under article 4436b. Even if there is an overlap, we do not think that a county is prohibited from voluntarily assuming a responsibility that is also borne by a hospital district.[3]

---

3. Hospital districts, county health departments, and health districts are not required to seek out indigents and to provide them with services. Rather, they must provide certain services when those services are sought by indigents. Therefore, even if there are overlapping responsibilites in the context you ask about, neither political subdivision is in the position of being unable to fulfill its duty because another political subdivision has already done so.

We note that the Interlocal Cooperation Act, article 4413(32c), V.T.C.S., would permit a county (or a health district) to contract with a hospital district for the provision of services that both are obligated or authorized to provide.

Your seventh question is:

> Your paragraph on page 2 of JM-722 states:
>
> When a hospital district is created for the county pursuant to article IX, section 9, of the Texas Constitution, the county constitutionally does not have the power to levy or use taxes to provide for medical services for indigent residents of the hospital district, as such power and obligation rests exclusively on the hospital district.
>
> Anticipating possible confusion caused by references to medical services, health care, medical care, public health clinics and public health services, is this statement consistent with your answers to the foregoing questions?

Attorney General Opinion JM-722 (1987) considered whether Jackson County was liable under the Indigent Health Care and Treatment Act, article 4438f, V.T.C.S., for health care services for indigent residents of that county. Article IX, section 13, of the Texas Constitution was not relevant to that question. Therefore, it was not discussed in Attorney General Opinion JM-722. Taken out of context, the paragraph you quote is incomplete inasmuch as it does not mention that article IX, section 13, of the Texas Constitution makes exceptions to certain provisions of article IX, section 9.

### S U M M A R Y

The determination of whether a particular expenditure is for medical care for purposes of article IX, section 9, of the Texas Constitution must be made on a case-by-case basis. Similarly, the determination of whether a service constitutes mental health or mental retardation services or public health services must be made on a case-by-case basis.

The enabling statute of a hospital district must specifically mention mental health and mental retardation services and public health units and clinics in order to prevent a political subdivision within a hospital district from exercising any authority it might otherwise have to provide such services.

Article IX, section 13, of the Texas Constitution does not impose a duty on any political subdivision to provide mental health or mental retardation services or public health services.

Although we cannot determine whether there is in fact an overlap, it is possible that a county that has established a local health department or has become a member of a health district and a hospital district have overlapping responsibilities. There is no legal impediment to each of two political subdivisions having a duty to provide the same services when those services are sought by indigents.

Very truly yours

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General